**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deanna L. Kelley, ) | CIV-12-02369-PHX-MHB |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Carolyn W. Colvin, Commissioner of the ) Social Security Administration, ) | |
| Defendant. ) | |

Pending before the Court is Plaintiff Deanna L. Kelley's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income in December 2007, alleging an onset date of disability of December 19, 2007. (Transcript of Administrative Record ("Tr.") at 159-71.) Plaintiff's claims were denied initially (Tr. at 130-33), on reconsideration (Tr. at 139-45), and, after an administrative hearing (Tr. at 84-125), by an ALJ in March 2011 (Tr. at 21-38). The Appeals Council denied Plaintiff's request for review (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

\\\

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920).  At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work.  See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 19, 2007 – her alleged onset date.  (Tr. at 26.)  At step two, she found that Plaintiff had the following severe impairments: fibromyalgia with headaches and history of asthma; irritable bowel syndrome; and GERD.  (Tr. at 26-27.)  At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations.  (Tr. at 27.)  After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except claimant must avoid climbing ladders, ropes and scaffolds and frequent exposure to extreme heart, extreme cold, concentrated fumes, odors and gases."[1]  (Tr. at 27-33.)  The ALJ determined that Plaintiff is capable of performing past relevant work as a grocery store cashier.  (Tr. at 33.)  The ALJ stated that this work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.  (Tr. at 33.)  Therefore, the ALJ concluded that Plaintiff has not been under a disability from June 6, 2006, through the date of her decision.  (Tr. at 33-34.)

\\\

\\\

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to make a function-by-function assessment of her residual functional capacity; (2) failing to properly consider her subjective complaints; (3) failing to properly weigh medical source opinion evidence; and (4) finding that Plaintiff has past relevant work as a grocery clerk cashier. Plaintiff requests that the Court remand the matter for a computation of benefits.

**A.     Function-by-Function Assessment**

Plaintiff argues that the ALJ erred by failing to set forth a function-by-function assessment of her residual functional capacity resulting in legal error. Specifically, Plaintiff states that the ALJ assessed a residual functional capacity for "light" work, yet failed to include the effects of headaches, irritable bowel syndrome, and GERD (labeled "severe" by the ALJ) in the residual functional capacity assessment. Moreover, Plaintiff states that her fibromyalgia causes chronic pain (and is recognized as "severe"), yet the nonexertional effect of pain is also not noted in the residual functional capacity assessment. Defendant does not dispute that the ALJ did not set forth a function-by-function assessment, but argues instead that function-by-function assessments are not always necessary.

Social Security Ruling 96-8p sets forth the policies regarding the assessment of a claimant's residual functional capacity. However, "[t]he ALJ is not required, as [Plaintiff] contends, to engage in a function-by-function analysis under SSR 96-8p. SSR 96-8p requires only that the ALJ discuss how evidence supports the residual function capacity assessment and explain how the ALJ resolved material inconsistencies or ambiguities in evidence ... ." Mason v. Comm'r of Soc. Sec., 379 F.App'x 638, 639 (9th Cir. 2010). Accordingly, Plaintiff's argument is unfounded.

In support of the residual functional capacity assessment, the ALJ discussed a wide range of medical evidence and witness testimony. (Tr. at 27-33.) The ALJ appropriately addressed Plaintiff's credibility by discussing the objective evidence, Plaintiff's daily activities, as well as type, dosage, effectiveness, and side effects of any medications taken to alleviate pain and other symptoms. As to the objective medical evidence, the ALJ

1 identified which medical evidence was compelling and accorded it appropriate weight, and
2 also identified the medical evidence that was less compelling, explained why it was less
3 compelling, and accorded it little weight. The ALJ provided ample explanations as to how
4 the medical evidence supported her residual functional capacity assessment and how she
5 resolved inconsistencies in the evidence. (Tr. at 27-33.) The Court concludes that the ALJ's
6 residual functional capacity assessment meets the burden imposed by SSR 96-8p and is
7 supported by substantial evidence.

**B.     Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek

1 treatment or to follow a prescribed course of treatment; and (3) the claimant's daily
2 activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn v. Astrue, 495
3 F.3d 624, 637-39 (9th Cir. 2007).[2] The ALJ also considers "the claimant's work record and
4 observations of treating and examining physicians and other third parties regarding, among
5 other matters, the nature, onset, duration, and frequency of the claimant's symptom;
6 precipitating and aggravating factors; [and] functional restrictions caused by the symptoms
7 ... ." Smolen, 80 F.3d at 1284 (citation omitted).

Plaintiff appeared and testified at the March 9, 2011 administrative hearing. (Tr. at 84-125.) Plaintiff testified that she had all over pain every day and was constantly fatigued. (Tr. at 106-08.) She said she would try to lay down all day if possible, and that her daughters did many chores. (Tr. at 106-08.) She testified to having migraine headaches since the age of 12 that were worst under stress. (Tr. at 106-07.) Plaintiff said she could sit for 20 minutes at a time, stand for 20 to 30 minutes at a time, and walk for 20 to 30 minutes at a time before needing to sit. (Tr. at 111-12.)

Having reviewed the record along with the ALJ's credibility analysis, the Court finds that the ALJ made extensive credibility findings and identified several clear and convincing reasons supported by the record for discounting Plaintiff's statements regarding her pain and limitations. (Tr. at 28-33.)

In her evaluation of Plaintiff's credibility, the ALJ first referenced the objective medical evidence finding that said evidence did not fully support Plaintiff's allegations of disabling symptoms and limitations. (Tr. at 29-31); see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

- 6 -

1 sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted); Batson
2 v. Comm'r of Social Security, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical
3 evidence supporting claimant's allegations supported ALJ's finding that claimant was not
4 credible).

5       The ALJ discussed the findings of Virginia S. Rowland, M.D., who performed a
6 consultative internal medical evaluation of Plaintiff on March 28, 2008 due to Plaintiff's
7 complaints of fibromyalgia and migraine headaches. (Tr. at 29, 281-87.) Dr. Rowland
8 diagnosed Plaintiff with fibromyalgia; migraine headaches; history of asthma; irritable bowel
9 syndrome, GERD, and "ulcer" disease; and mixed anxiety/depression. (Tr. at 29, 281-87.)
10 However, based on the essentially normal objective findings, Dr. Rowland opined that
11 Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, and sit, stand,
12 and walk for unlimited hours in an eight-hour workday. (Tr. at 30, 281-87.)

13       Next, the ALJ addressed the findings of Michael D. Rabara, Psy.D., who conducted
14 a consultative psychological evaluation of the claimant on May 7, 2008 due to symptoms of
15 depressed mood. (Tr. at 30, 301-07.) Dr. Rabara opined that Plaintiff would have mild
16 difficulties with remembering and carrying out detailed instructions and work-like
17 procedures, sustain her concentration, performing activities within a schedule, completing
18 tasks at a consistent pace, and responding to supervisors and work setting changes. (Tr. at
19 30, 301-07.)

20       The ALJ then discussed progress notes from 2008 through 2010, and a March 9, 2011
21 "Medical Assessment of Ability to do Work Related Physical Activities" completed by
22 Plaintiff's treating physician, Robert J. Casey, D.O. (Tr. at 30-31, 322-24, 346,54, 363-99,
23 400-01.) Regarding the progress notes, the ALJ noted that although the records reflect
24 complaints of severe pain, her physical examinations were essentially normal in every
25 respect. (Tr. at 30-31, 322-24, 346,54, 363-99.) Nonetheless, in his Assessment of Ability
26 to do Work Related Physical Activities, Dr. Casey opined that Plaintiff should have total
27 restriction from unprotected heights and moving machinery and moderate restriction in
28

1 exposure to marked changes in temperature/humidity, dust fumes and gases, and in driving.
2 (Tr. at 31, 400-01.)

3 Lastly, the ALJ discussed the findings of Minh D. Vu, M.D., the impartial medical
4 expert who testified at the hearing. (Tr. at 31, 84-125.) Dr. Vu found that based on review
5 of the entire file, Plaintiff is limited to a light residual functional capacity with additional
6 postural and environmental limitations. (Tr. at 31, 84-125.)

7 After having considered the objective medical evidence in her evaluation of Plaintiff's
8 credibility, the ALJ examined Plaintiff's daily activities. (Tr. at 31-32.) "[I]f the claimant
9 engages in numerous daily activities involving skills that could be transferred to the
10 workplace, an adjudicator may discredit the claimant's allegations upon making specific
11 findings relating to the claimant's daily activities." Bunnell v. Sullivan, 947 F.2d 341, 346
12 (9th Cir. 1991) (citing Fair, 885 F.2d at 603); see Berry v. Astrue, 622 F.3d 1228, 1234-35
13 (9th Cir. 2010) (claimant's activities suggested a greater functional capacity than alleged).
14 Specifically, the evidence demonstrated that Plaintiff's activities of daily living consisted of
15 light household chores, driving, shopping, and communicating with people over the phone.
16 (Tr. at 31-32.) The ALJ additionally found that Plaintiff's allegations of limited daily
17 activities could not be verified by the objective medical evidence, and also stated that based
18 on the medical evidence of record it is difficult to attribute any of the limitations in daily
19 activities alleged by Plaintiff to her medical conditions. (Tr. at 31-32.) While not alone
20 conclusive on the issue of disability, an ALJ can reasonably consider a claimant's daily
21 activities in evaluating the credibility of his subjective complaints. See, e.g., Stubbs-
22 Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's credibility
23 determination based in part of the claimant's abilities to cook, clean, do laundry, and help her
24 husband with the finances); Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005)
25 (upholding ALJ's credibility determination based in part on the claimant's abilities to cook,
26 clean, shop, and handle finances).

27 Finally, in her evaluation of Plaintiff's credibility, the ALJ stated that she also
28 considered other factors, including, the location, duration, frequency, and intensity of pain

- 8 -

1    and other symptoms; precipitating and aggravating factors; and the type, dosage,

2    effectiveness, and side effects of any medication taken to alleviate pain. (Tr. at 32.)

3    Ultimately, the ALJ granted "little probative weight" to Plaintiff's testimony. The

4    ALJ found that her statements at the hearing were inconsistent with the substantial evidence

5    in the record and, thus, her statements of significant limitations in sitting, standing, and

6    walking were not supported by the normal objective findings. The ALJ continued stating:

> Claimant has gotten the conservative treatment only and there is no evidence that she has ever been referred to any orthopedic or neurological diagnostic studies, thus indicating lack of the objective findings supporting such referral. Further, the claimant's allegations of severe side effects of medication contradict Dr. Casey's opinion of no side effects (Ex. 18F/2). While alleging disabling mental limitations, claimant has not taken any medication for mental problems or sought a regular mental treatment. During the hearing, the claimant was able to fully attend and follow all questions. These discrepancies and inconsistencies in claimant's statements do not support the claimant's ultimate allegation of disability.

(Tr. at 33.)

In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's allegations not entirely credible. While perhaps the individual factors, viewed in isolation, are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors that led to the ALJ's decision. The Court concludes that the ALJ has supported her decision to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore, the Court finds no error.

**C.     Medical Source Opinion Evidence**

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence. Plaintiff argues that the ALJ did not provide "specific and legitimate" reasons based on substantial evidence in the record for rejecting Dr. Casey's opinion.

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle, 533 F.3d at 1164. Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating

- 9 -

1  physicians, who actually treat the claimant; (2) examining physicians, who examine but do
2  not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the
3  claimant. See Lester, 81 F.3d at 830. Generally, more weight should be given to the opinion
4  of a treating physician than to the opinions of non-treating physicians. See id. Where a
5  treating physician's opinion is not contradicted by another physician, it may be rejected only
6  for "clear and convincing" reasons, and where it is contradicted, it may not be rejected
7  without "specific and legitimate reasons" supported by substantial evidence in the record.
8  See id. Moreover, the Commissioner must give weight to the treating physician's subjective
9  judgments in addition to his clinical findings and interpretation of test results. See id. at 832-
10 33.

11 The opinion of a non-examining physician is not itself substantial evidence that
12 justifies the rejection of the opinion of either a treating physician or an examining physician.
13 See id. at 831. "The opinions of non-treating or non-examining physicians may also serve
14 as substantial evidence when the opinions are consistent with independent clinical findings
15 or other evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).
16 Factors that an ALJ may consider when evaluating any medical opinion include "the amount
17 of relevant evidence that supports the opinion and the quality of the explanation provided;
18 the consistency of the medical opinion with the record as a whole; [and] the specialty of the
19 physician providing the opinion." Orn, 495 F.3d at 631.

20 The parties do not dispute that the specific and legitimate standard applies.
21 Historically, the courts have recognized the following as specific, legitimate reasons for
22 disregarding a treating or examining physician's opinion: conflicting medical evidence; the
23 absence of regular medical treatment during the alleged period of disability; the lack of
24 medical support for doctors' reports based substantially on a claimant's subjective complaints
25 of pain; and medical opinions that are brief, conclusory, and inadequately supported by
26 medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten
27 v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair, 885
28 F.2d at 604.

1    In December 2007, Dr. Casey diagnosed Plaintiff with fibromyalgia after his physical
2  examination showed that fibromyalgia points were tender to palpation and she had limb
3  weakness with repetitive movement. (Tr. at 260.) He confirmed his diagnosis at follow-up
4  visits in early 2008 when Plaintiff continued to have tender trigger points; he also noted that
5  Plaintiff's head and neck muscles were very tight. (Tr. at 258, 259.)

6    Plaintiff saw Dr. Casey again in August 2008, when his physical examination
7  indicated that Plaintiff had good range of motion and strength, but that certain fibromyalgia
8  points remained tender. (Tr. at 324.) He recommended continuing her pain medication. (Tr.
9  at 324.) On the same day, Dr. Casey wrote a one-sentence letter where he opined that
10 Plaintiff was unable to work in any capacity and should be considered totally disabled. (Tr.
11 at 322.) At later visits in 2008, Plaintiff reported neck and back pain in particular, and Dr.
12 Casey observed tight muscles, poor range of motion, and tender muscle bundles. (Tr. at
13 350-53.)

14   Plaintiff continued to see Dr. Casey in 2009 for her fibromyalgia. (Tr. at 347, 391,
15 389, 346, 387.) Dr. Casey observed that 11 of 18 fibromyalgia trigger points were tender.
16 (Tr. at 389, 346, 387.) In addition to pain medication (hydrocodone), Dr. Casey emphasized
17 conservative treatment measures such as low impact exercises, breathing exercises, diet
18 restrictions, and osteopathic manipulative treatment (OMT). (Tr. at 391, 3 389, 346, 387.)

19   From January through May of 2010, Dr. Casey had similar findings and continued the
20 same treatment plan. (Tr. at 386, 381, 382, 383, 380, 379.) By June of 2010, Dr. Casey
21 noted that OMT and medication had produced good results for Plaintiff, that her pain level
22 was a 5 out of 10 on a 10-point scale, and that as such it was under good control with
23 medication and treatment. (Tr. at 377-78.) Dr. Casey continued to emphasize conservative
24 measures such as a gentle exercise program, rest, and stress reduction at office visits in July
25 and August. (Tr. at 376, 375, 374, 373.) By the fall and winter of 2010, the emphasis of
26 Plaintiff's treatment shifted to her neck pain, back pain, and headaches; Dr. Casey observed
27 tight muscles and restricted range of motion in Plaintiff's head, neck, and limbs. (Tr. at 372,
28 371, 370, 369, 368, 367.) Dr. Casey diagnosed muscle spasm and degenerative joint disease,

1    and added acupuncture to Plaintiff's treatment plan which produced good results. (Tr. at 372,
2    371, 370, 369, 368.) By December 2010, Plaintiff reported that her pain was responding to
3    treatment and she was trying to work. (Tr. at 367.) Plaintiff reported ongoing neck pain and
4    headaches at follow-up visits with Dr. Casey in early 2011. (Tr. at 365, 364, 363.) Dr.
5    Casey observed tight and tender muscles in Plaintiff's head and neck regions, but also noted
6    that OMT produced good results and he continued his same treatment plan. (Tr. at 365, 364,
7    363.)

8    In March of 2011, Dr. Casey completed a medical assessment of work-related abilities
9    form. (Tr. at 400-01.) Dr. Casey indicated that Plaintiff suffered from headaches five times
10   per day, seven times per week, and that her headaches lasted three or more hours. (Tr. at
11   400.) He also noted that various ancillary symptoms related to her headaches, such as
12   fatigue. (Tr. at 400.) Dr. Casey opined that Plaintiff had extreme impairment in her ability
13   to function in a work-related setting, and that her restriction was severe. (Tr. at 401.)

14   The ALJ gave Dr. Casey's multiple opinions various weights. (Tr. at 32.) For
15   example, she afforded little weight to his August 2008 opinion because Dr. Casey did not
16   define Plaintiff's work related limitations but rather opined on issues reserved to the
17   Commissioner. (Tr. at 32.) As to Dr. Casey's Assessment of Ability to do Work Related
18   Physical Activities, the ALJ stated that the opinion regarding Plaintiff's symptoms and
19   frequency of headaches as well as the existence of mental impairments is given little weight
20   as the symptoms set forth therein are based on Plaintiff's subjective self-reports. (Tr. at 32.)
21   She, however, gave Dr. Casey's opinion about moderate environmental limitations
22   significant weight as it was consistent with the substantial evidence of record. (Tr. at 32.)

23   The Court finds that the ALJ did not err in his assessment of Dr. Casey's opinion. Not
24   only did Dr. Casey give a determination on the ultimate question of disability – which said
25   determination is reserved solely to the Commissioner – but the ALJ found that his
26   conclusions were based primarily on Plaintiff's subjective complaints, and were
27   uncorroborated and inconsistent with the objective medical evidence of record. See 20
28   C.F.R. § 404.1527(d)(1)-(3) (treating source opinions on whether a plaintiff is disabled are

1  reserved to the Commissioner and are not entitled to any special significance); McLeod v.
2  Astrue, 640 F.3d 881, 884 (9th Cir. 2011) (A treating physician's opinion is "not binding on
3  an ALJ with respect to the existence of an impairment or the ultimate issue of disability.");
4  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating
5  physician's opinion if it is based "to a large extent" on a claimant's self-reports that have
6  been properly discounted as incredible."); 20 C.F.R. § 404.1527(c)(4) (stating that an ALJ
7  must consider whether an opinion is consistent with the record as a whole); Batson, 359 F.3d
8  at 1195 (stating that an ALJ may discredit treating physicians' opinions that are conclusory,
9  brief, and unsupported by the record as a whole, or by objective medical findings).
10 Accordingly, the ALJ provided several specific and legitimate reasons, based on substantial
11 evidence in the record, for discounting Dr. Casey's opinion.

## D.    Past Relevant Work as a Grocery Clerk Cashier

Plaintiff contends that the ALJ erred in finding Plaintiff to have past relevant work as a grocery clerk cashier. Plaintiff states that she performed work as a grocery clerk for one month in a part-time capacity at 12 hours per week. She states that this does not qualify as past relevant work.

Vocational expert Kathy Atha testified that Plaintiff's past relevant work included 13 years as a construction store cashier, one year as a merchandizer, and one month as a grocery store cashier. (Tr. at 114.) She testified that Plaintiff's work as a construction store cashier and as a grocery store cashier were both categorized as having a SVP level of 3. (Tr. at 114.) Ms. Atha testified that Plaintiff could perform her work as a grocery store cashier given her previous 13 years of work as a construction store cashier. (Tr. at 114.) Based on this testimony, the ALJ found that while Plaintiff only worked as a grocery store cashier for short period of time, the job met the definition of past relevant work because her prior work experience as construction store cashier allowed her to learn this job within a month. (Tr. at 33, 114.)

Under agency regulations, "work [Plaintiff has] already been able to do shows the kind of work that [she] may be expected to do." See 20 C.F.R. § 404.1565(a). Thus, skills

1  that Plaintiff acquired through her past work as a construction store cashier are skills Plaintiff
2  is considered to have and, as such, Ms. Atha's testimony to that effect was consistent with
3  agency regulations.  See id. ("If you have acquired skills through your past work, we
4  consider you to have these work skills ... .").

5  Further, Ms. Atha's testimony indicated that Plaintiff's skills learned as a construction
6  store cashier transferred to work as a grocery store cashier.  (Tr. at 114); see 20 C.F.R. §
7  404.1568(d) ("We consider you to have skills that can be used in other jobs, when the skilled
8  or semi-skilled work activities you did in past work can be used to meet the requirements of
9  skilled or semi-skilled work activities of other jobs or kinds of work.").  For these reasons,
10 the Court finds that the ALJ did not err in finding that Plaintiff could perform her past work
11 as a grocery store cashier.  (Tr. at 33.)

12 Plaintiff also argues that her past work as a grocery store cashier should not have been
13 considered by the ALJ because it did not meet the definition of substantial gainful activity
14 (SGA).  This argument fails because the work does in fact meet the definition of SGA – work
15 is considered substantial even if it is done only on a part-time basis and for less pay, and
16 work is considered gainful whenever it is the kind of work usually performed for pay or
17 profit.  See 20 C.F.R. § 404.1572.  Here, it is undisputed that Plaintiff was employed as a
18 cashier for pay and, therefore, her work meets this definition.  Further, while Plaintiff may
19 have worked only part-time for a modest income as a grocery store cashier, the record
20 indicates that she made at least $1,234.09 in 2007 in this position (Tr. at 177), which was
21 above the non-blind presumptive monthly SGA income level of $900.00 for that year.  See,
22 e.g., 20 C.F.R. § 404.1574(b)(2) (defining earnings that show substantial gainful activity).

## V. CONCLUSION

24 Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for
25 disability insurance benefits and supplemental security income in this case.  Consequently,
26 the ALJ's decision is affirmed.

27 \\\
28 \\\

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 24th day of March, 2014.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge